IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TAMARA OGIER, Trustee for the Bankruptcy Estate of Brittany Dakota Bosley, Case No. 20-70664-SMS, and BRITTANY DAKOTA BOSLEY,<br><br>    Plaintiffs,<br><br>v.<br><br>INTERNATIONAL FOLLIES, INC. D/B/A CHEETAH,<br><br>    Defendant. | Civil Action File No.<br>1:21-cv-2421-VMC |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant International Follies, Inc. d/b/a Cheetah ("Cheetah") and submits this Reply Brief in support of its Motion for Summary Judgment [Doc. 42]. Cheetah has demonstrated that there are no *genuine* issues of *material* fact, and summary judgment is warranted in its favor.

In their response [Doc. 47], Plaintiffs Tamara Ogier, Trustee for the Bankruptcy Estate of Brittany Dakota Bosley, Case No. 20-70664-SMS ("Trustee") and Brittany Dakota Bosley ("Bosley") (together "Plaintiffs") conflate the issues and push for a standard that does not even exist under the FLSA.

## Introduction[1]

First, Plaintiffs argue that "Plaintiffs' FLSA minimum wage claim can be proven under the DOL's current rule with respect to *house moms* only." Response, p. 15 (emphasis added). Plaintiffs' arguments regarding house moms fail as a matter of law because house moms were <u>not</u> part of the tip pool to which dancers contributed. Plaintiffs have already conceded that: "[T]here is no tip pooling allegation in this case. So there's been no allegation that the house moms were participating in a tip pool." Bosley Tr. 90:19-23. Instead, Plaintiffs grossly mischaracterize 29 U.S.C. § 203(m)(2)(B) to argue that Cheetah has violated the FLSA by virtue of tips Bosley *voluntarily* gave to house moms outside of any tip pool and which were not even disclosed to Cheetah.

Second, although Plaintiffs concede that bouncers do not meet the current definition of "managers or supervisors," which are barred from participating in a tip pool, Plaintiffs argue that the Court should disregard the Department of Labor's regulations regarding the employees who qualify as "managers or supervisors" in

---

[1] Cheetah is contemporaneously responding to "Plaintiffs' Statement of Additional Material Facts Presenting a Genuine Issue for Trial" [Doc. 47-3], most of which are immaterial allegations regarding purported job duties of house moms despite the facts that (1) they did not participate in a tip pool and (2) Cheetah did not require dancers to tip them. Cheetah incorporates its Response to "Plaintiffs' Statement of Additional Material Facts Presenting a Genuine Issue for Trial" as if fully restated herein.

favor of a self-serving definition crafted by Plaintiffs.

## Argument and Citation to Authority

A. **CHEETAH IS NOT LIABLE BASED ON BOSLEY'S VOLUNTARY TIPS TO HOUSE MOMS OR BOUNCERS.**

As stated clearly in Plaintiffs' First Amended Complaint [Doc. 14-1], this is an FLSA "minimum wage action." Comp., ¶ 1. The lone Count asserted by Plaintiffs is that Cheetah failed to pay minimum wage under 29 U.S.C. § 206(a). 29 U.S.C. § 206(a) provides that an employer "shall pay" "wages" in the amount of $7.25 per hour. 29 U.S.C. § 203(m)(2)(A), in turn, provides that "[i]n determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to [$2.15 plus tips]." Further, "all tips received by such employee [must] have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A).

Whether house moms are "managers or supervisors" is patently irrelevant and a red herring. House moms were not included in the tip pool. Plaintiffs concede that: "[T]here is no tip pooling allegation in this case. So there's been no allegation that the house moms were participating in a tip pool." Bosley Tr. 90:19-23. Moreover, Cheetah had absolutely <u>no</u> requirement, rule, policy, or directive that dancers tip

3

house moms otherwise.

The language of 29 U.S.C. § 203(m)(2)(B) provides that: "*An **employer*** may not ***keep*** tips received by its employees for any purposes, including ***allowing*** managers or supervisors to ***keep*** any portion of employees' tips, regardless of whether or not the employer takes a tip credit." (emphasis added).

Bosley signed the Cheetah's Notice of Tip Credit which provides that "all of my tips I am to keep, other than what we give back *to the tip pool* for whoever receives tips." Bosley Tr. 33:20-24 (emphasis added); Bosley Tr. Ex. 2, p. 5. Bosley also reviewed the Cheetah's Entertainer Employee Policies ("Policies"), which provide, *inter alia*, that other than the 10% tip pool to bouncers and DJs, "[t]here is **no other mandatory tipping**. With the exception of any lawful contributions to a tip pool that you may be required to make, the applicable law requires that you be allowed to retain all of your remaining tips. Management will not retain any of your tips." Bosley Tr. Ex. 3, p. 2 (Tip-Out section) (emphasis added); Bosley Tr. 46:7-10, 48:14-50:22, 71:25-72:10, 108:18-110:5; Bouncer Declarations, ¶ 6.

The Policies further provide: "If an entertainer feels pressured [or "subjected to any coercion, harassment or other intimidating actions"] to share tips with anyone other than through the contribution to the tip pool referenced above, the entertainer must contact General Manager Jack Braglia at 404-724-2330 ext. 106 immediately."

Bosley Tr. Ex. 3; Bosley Tr. 49:17-50:22, 108:18-110:5. Bosley <u>never</u> spoke to Jack Braglia ("Braglia") regarding any issues with respect to tips or the tip pool and <u>never</u> reported to Braglia that she was tipping for VIP referrals. <u>Id.</u> at 50:23-51:5, 110:6-9, 122:13-17; <u>see also</u> <u>id.</u> at 42:11-19, 50:23-51:5, 52:3-8, 99:19-100:5. In fact, she never told anyone else at Cheetah about tipping the bouncers outside of the tip pool. <u>Id.</u> at 53:9-16.

During Bosley's employment at Cheetah, Cheetah also had a poster hanging on the bullet board that states: "Entertainers are **not permitted to tip anyone** including floor managers, housemoms, waitstaff, or any Cheetah employee, **for referral or introduction to a VIP customer**, or **for recommending an entertainer** to any customer for a VIP room experience." Bosley, Ex. 10 (emphasis added), 110:16-111:9. Bosley had seen and was aware of the poster during the course of her employment with Cheetah. Bosley Tr. 110:19-20; 111:10-13. Her decision to tip bouncers and house moms was actually a violation of Cheetah's Policies, and she failed to alert Braglia that she was making such tips.

There is *zero* evidence that Cheetah *kept* tips received by Bosley (or anyone else), including by "*allowing* managers or supervisors to keep any portion of employees tips." 29 U.S.C. § 203(m)(2)(B) (emphasis added). To the contrary, Cheetah's Policies strictly provide the opposite. The Department of Labor expressly

5

provides that the: "(1) *Meaning of "keep."* Section 3(m)(2)(B)'s prohibition against keeping tips applies regardless of whether an employer takes a tip credit. Section 3(m)(2)(B) expressly prohibits employers from ***requiring*** employees to share tips with managers or supervisors, as defined in § 531.52(b)(2), or employers, as defined in 29 U.S.C. 203(d)." 29 C.F.R. § 531.54(b)(1) (emphasis added). Without a doubt, the FLSA prohibits an employer from requiring its employees to tip a manager or supervisor. That is not what happened at Cheetah.

Any tips Bosley gave to house moms or to bouncers outside of the tip pool were indisputably given voluntarily. Bosley Tr. 51:13-52:2. Bosley *chose* to tip house moms in certain circumstances. Bosley Tr. 51:13-52:2, 55:21-56:18, 76:21-77:4, 93:3-94:11, 95:24-96:9. It is undisputed that house moms were not included in the tip pool. It is undisputed that Cheetah's Policies prohibited tips to anyone outside of the 10% tip pool to bouncers and DJs. It is undisputed that Cheetah's posted notices also prohibited tips to *anyone* for a VIP referral. Bosley made a *choice* to ignore those directives. She *chose* to tip out house moms and bouncers for her own benefit. Remarkably, Bosley (or her lawyer) necessarily now argues that she could not choose what to do with her own tips. That is wrong.

The FLSA does not prohibit an employee from giving a tip to a co-worker. Although it is an unquestionably paternalistic statute, the FLSA still allows for some

6

level of free-will. Specifically, an employee has the right to do with her money what she chooses, including to whom she gives tips and, if so, how much.

Bosley fails to mention, let alone distinguish, the authority cited by Cheetah that "a tipped employee may voluntarily share tips with whichever co-workers the tipped employee chooses." See Dep't of Labor Field Operations Handbook § 30d04(g) (December 9, 1988), http://www.dol.gov/whd/FOH/FOH_Ch30.pdf (last viewed May 19, 2022); see also Roussell v. Brinker Int'l, Inc., 441 F. App'x 222, 230 (5th Cir. 2011); Lockett v. Pinnacle Ent., Inc., 2021 WL 960424, *1, *6 (W.D. Mo. Mar. 12, 2021); Walsh v. Dayemi Org., Inc., No. 21-CV-56-SMY, 2022 WL 2291706, at *4 (S.D. Ill. June 24, 2022) ("a tipped employee may voluntarily choose to share tips with an otherwise ineligible employee"). If an employee voluntarily tips a co-worker, "the employee has exercised legal ownership rights in that money because the employee has made the independent decision to share a portion of it with others." Kubiak v. S.W. Cowboy, Inc., 164 F. Supp. 3d 1344, 1355, 1361 (M.D. Fla. 2016).

Bosley cites a single case in support of her contention that "[t]he purported issue of voluntariness is merely a red herring." Response, p. 13. She relies on Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740-41 (1981) to argue that "employees may not waive rights granted by the FLSA and may not

'voluntarily' participate in a prohibited tip pooling arrangement." Response, p. 13. The <u>Barrentine</u> case is readily distinguishable. It was a case concerning federal jurisdiction after a wage claim was presented "to a joint grievance committee pursuant to the provisions of [an employee's] collective bargaining agreement." 450 U.S. 728. While the Court explained, in that context, that its "decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act [such as by contract], <u>id.</u> at 740, the <u>Barrentine</u> case makes no mention of tips, tipping, tip pools, or voluntary participation in same. Here, there is no alleged contract or practice waiving or purporting to waive Bosley's right to minimum wage. Instead, Bosley has actually conceded that she was paid $2.13 per hour plus tips and that "her tips always exceeded the federal minimum wage." Bosley Tr. 9:20-10:7 and 34:10-14.

**B.    THE BOUNCERS' PARTICIPATION IN THE TIP POOL DID NOT VIOLATE 29 U.S.C. § 203(m)(2)(B).**

Plaintiffs' second argument is that, even if they cannot demonstrate that voluntary tips to house moms violated the FLSA, this Court should ignore the Department of Labor's regulation regarding which employees are "managers or supervisors" under 29 U.S.C. § 203(m)(2)(B) in favor of a self-serving definition supplied by Plaintiffs.

In 29 C.F.R. § 531.52(b)(2), the Department of Labor identified "managers or

supervisors" under 29 U.S.C. § 203(m)(2)(B) as "any employee *whose duties* match those of an *executive employee* as described in § 541.100(a)(2) through (4)." (emphasis added). Plaintiffs recognize the "longstanding" test set forth in 29 U.S.C. § 541.100(a)(2)-(4); yet, Plaintiffs argue that the Court should disregard it in favor of their own "any factor" test. As shown by Cheetah in its original briefing [Doc. 42-1, pp. 17-18] and as conceded, at least implicitly, by Plaintiffs, bouncers do *not* qualify as "managers or supervisors" as set forth in the regulations.

The phrase "managers or supervisors" as used in 29 U.S.C. § 203(m)(2)(B) was not defined by Congress in enacting that provision. Thus, there was a "gap" for the Department of Labor to fill, contrary to some of Plaintiffs' arguments. See Response, p. 15; but see Response, p. 16 ("In 29 U.S.C. § 204, Congress did grant the Secretary of Labor the duty of administering the Act. And '[t]he power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."); see also Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 843-44 (1984); Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 158, 127 S. Ct. 2339, 2341–42, 168 L. Ed. 2d 54 (2007); Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 220, 136 S. Ct. 2117, 2125, 195 L. Ed. 2d 382 (2016). "As with all agency rules, the DOL's regulations implementing

the FLSA are accorded *Chevron* deference." See Falken v. Glynn Cnty., Georgia, 197 F.3d 1341, 1346 (11th Cir. 1999).

When "the court determines Congress has not directly addressed the precise question at issue, **the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.** Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843 (emphasis added). "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Id. at 844. Thus, the second step of Chevron analysis is whether the agency's interpretation is reasonable. Id.; see also Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 160 (2007). Here, the Department of Labor has carefully and reasonably interpreted who constitutes "managers or supervisors" under 29 U.S.C. 203(m)(2)(B).

Plaintiffs focus on dictionary and Google definitions of the "*disjunctive* terms" "managers or supervisors." Response, pp. 18-21. Given the Department of

10

Labor's interpretation, such cherry-picked dictionary and Google definitions are simply inapplicable. Further, Plaintiffs' arguments regarding the "*disjunctive* terms" of "managers or supervisors" is nothing more than pure conjecture. Response, pp. 18-21. As an initial matter, "'[t]he definition[s] of words in isolation however, [are] not necessarily controlling in statutory construction. . . . Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" Cascabel Cattle Co., L.L.C. v. United States, 955 F.3d 445, 451 (5th Cir. 2020).

Consistent with the Department of Labor regulation, Congress intended a "higher-level employee" who *met certain criteria* to be barred from participating in a tip pool *regardless* of whether an employer called or labeled that *type* of employee a "manager" or "supervisor." Thus, Congress used the "*disjunctive*" phrase "managers or supervisors" in 29 U.S.C. § 203(m)(2)(B). In 2020, another district court examining the language of 29 U.S.C. § 203(m)(2)(B) held that this "subsection of the FLSA expresses Congress' *unambiguous intent* that an *employer or manager* may not receive a portion of tips received by employees." Whited v. New Cafe at Greystone Gardens, No. CV 3:18-1811, 2020 WL 1271681, at *5 (M.D. Pa. Mar. 17, 2020) (emphasis added).

Plaintiffs finally argue that this Court should disregard the Department of Labor's regulation regarding "managers or supervisors" in favor of a definition crafted by Plaintiffs' lawyer to support their claims in this matter. Specifically, Plaintiffs "make up" their own rule that an employee that fits into "any of the three categories of duties enumerated in 29 C.F.R. § 541.100(a)(2)-(4)" would be a "manager or supervisor" barred from participating in a tip pool. In that way, any employee that provides a mere *suggestion* about who to hire would be barred from participating in a tip pool. A shift supervisor that does nothing more than oversee a few other employees during a shift, while taking on all of the same job duties as her co-workers, would be barred from participating in a tip pool. Plaintiffs' interpretation is completely unreasonable and cannot replace the reasonable interpretation by the Department of Labor. Pursuant to the Department of Labor regulations, bouncers are not "managers or supervisors" barred from participating in the tip pool at Cheetah.

**WHEREFORE,** Cheetah has demonstrated that there are no genuine issues of material fact, and Cheetah is entitled to judgment as a matter of law.

*[signature on following page]*

Respectfully submitted this 5th day of July, 2022.

        SCHULTEN WARD TURNER & WEISS, LLP

        */s/ Andrea L. Pawlak*
        Andrea L. Pawlak, Georgia Bar No. 142541
        Schulten Ward Turner & Weiss, LLP
        260 Peachtree Street, N.W., Suite 2700
        Atlanta, Georgia 30303
        404-688-6800 (Phone)
        404-688-6840 (Fax)
        a.pawlak@swtwlaw.com
        *Counsel for Defendant International Follies, Inc. d/b/a Cheetah*

**CERTIFICATE OF COMPLIANCE AND SERVICE**

I hereby certify that this filing complies with the requirements of Local Rule 5.1C (Times New Roman, 14 point) and that I have this day served a copy of the within and foregoing upon counsel of record by CM/ECF which will cause a copy to be served electronically upon all counsel of record.

So certified this 5th day of July, 2022.

                                 SCHULTEN WARD TURNER & WEISS, LLP

                                 */s/ Andrea L. Pawlak*
                                 Andrea L. Pawlak, Georgia Bar No. 142541
                                 Schulten Ward Turner & Weiss, LLP
                                 260 Peachtree Street, N.W., Suite 2700
                                 Atlanta, Georgia 30303
                                 404-688-6800 (Phone)
                                 404-688-6840 (Fax)
                                 a.pawlak@swtwlaw.com
                                 *Counsel for Defendant International Follies, Inc. d/b/a Cheetah*