IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TAMARA OGIER, Trustee for the Bankruptcy Estate of Brittany Dakota Bosley, Case No. 20-70664-SMS, and BRITTANY DAKOTA BOSLEY,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL FOLLIES, INC. D/B/A CHEETAH,<br><br>Defendant. | Civil Action No. 1:21-cv-02421-VMC |

**ORDER**

Before the Court is the Motion of Defendant International Follies, Inc. d/b/a Cheetah ("Defendant") for Summary Judgment ("Motion," Doc. 42). Plaintiffs Tamara Ogier, Trustee for the Bankruptcy Estate of Brittany Dakota Bosley, Case No. 20-70664-SMS ("Trustee"), and Brittany Dakota Bosley ("Ms. Bosley," and collectively, "Plaintiffs") filed a Response in Opposition to the Motion ("Response," Doc. 47). Defendant filed a Reply in Support of the Motion ("Reply," Doc. 48).

**Background**

This Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* minimum wage case concerns allegations of unlawful sharing in a tip pool with so called

"house moms" and "floor managers" at a nightclub. Plaintiffs assert that "[t]he basic facts of this case need not be repeated beyond stating the fact that Plaintiff Bosley worked as an exotic dancer at an upscale Atlanta nightclub and regularly paid a portion of her tips to other club employees, including house moms and bouncers." (Resp. at 3 n.1). The Court largely agrees, but adds the following details about house moms and floor managers for background.

"House moms" help dancers, such as by helping them get ready or during their shift if they need something. (Def.'s Statement of Material Facts ("SMF") ¶ 28, Doc. 42-6; Pls.'Resp. to SMF ("RSMF") ¶ 28, Doc. 47-2).[1] House moms may also conduct an initial interview before an "actual audition" and "stage interview portion" in front of a club owner. (SMF ¶ 18, RSMF ¶ 18).

"Floor managers" are bouncers. It is undisputed that floor managers provide for the safety and security of the employees and the property and that they control the flow and seating of customers. (RSMF ¶ 12). It also undisputed that floor managers do not have the authority to hire or fire employees, though Plaintiffs assert they have the authority to discipline dancers by ordering them off stage under certain circumstances. (SMF ¶¶ 13, 17, RSMF ¶¶ 13, 17).[2]

---

[1] Plaintiffs only appear to dispute the second sentence of Statement No. 28, so the Court deems the first sentence admitted.

[2] Plaintiffs purport to dispute the entirety of Statement No. 13 but only cite evidence regarding floor managers' authority to discipline, and do not provide

When she was hired, Ms. Bosley received the Entertainer Employee Policies ("Policies") and signed an Acknowledgment of Receipt of Employee Policies and Attachments. (Def.'s Statement of Material Facts ("SMF") ¶ 7, Doc. 42-6; Pls.' Resp. to SMF ("RSMF") ¶ 7, Doc. 47-2). The Policies provide that:

> Entertainers are required to contribute to the floor managers and disc jockeys, collectively, ten percent (10%) of their total tips as part of a tip-pooling arrangement. There is no other mandatory tipping. With the exception of any lawful contributions to a tip pool that you may be required to make, the applicable law requires that you be allowed to retain all of your remaining tips. Management will not retain any of your tips.

(SMF ¶ 8, RSMF ¶ 8). The Policies do not provide for any participation in the tip pool by house moms. (*Id.*) The Policies further provide that

> If an entertainer feels pressured to share tips with anyone other than through the contribution to the tip pool referenced above, the entertainer must contact General Manager Jack Braglia . . . immediately. Any coercion, harassment or other actions to intimidate, blackmail or otherwise force any entertainer to share her tips with another employee will not be tolerated. . . . Any entertainer who feels she has been subjected to any coercion, harassment or other intimidating actions to force her to share their tips must contact General Manager Jack Braglia . . . immediately.

---

any evidence rebutting the notion that floor managers do not have the authority to hire or fire employees. Accordingly, this aspect of the statement is deemed admitted.

3

(SMF ¶ 41, RSMF ¶ 41). Ms. Bosley never spoke to Mr. Braglia regarding any issues with respect to tips or the tip pool and never reported to Mr. Braglia that she was sharing tips outside of the Policies' mandatory tip pool. (SMF ¶ 42, RSMF ¶ 42).

## Legal Standard

Federal Rule of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex*, 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence

and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable doubts should be resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). In addition, the court must "avoid weighing conflicting evidence or making credibility determinations." *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine dispute for trial. *Fitzpatrick*, 2 F.3d at 1115 (citations omitted).

## Discussion

The FLSA requires employers to provide a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a); *Miller v. Garibaldi's Inc.*, No. CV414-007, 2018 WL 1567856, at *4 (S.D. Ga. Mar. 30, 2018). However, tipped employees may receive a below-minimum wage, as long as the difference is made up by the employee receiving tips. 29 U.S.C. § 203(m). This difference is commonly referred to as the tip credit. *Miller*, 2018 WL 1567856, at *4.

An employer seeking to claim the tip credit must establish (1) that the particular employee is a tipped employee; (2) that it provided the employee with notice of its intention to claim the tip credit; and (3) that the employee retains all tips she received, except where the employer requires the employee to participate in a tip-pool that redistributes a portion of those tips with other employees who customarily and regularly receive tips. *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580 (9th Cir. 2010). Critically, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). "[T]he sharing of tips with managers invalidates the tip credit and requires the employer to pay the full minimum wage." *Miller*, 2018 WL 1567856, at *4 (quoting *Beaudry v. Emperor's Gentleman's Club, Inc.*, No. 8:14-CV-02653, 2015 WL 10844157, at *1 (M.D. Fla. Apr. 6, 2015)).

### I.     Floor Managers

Because there is no dispute that floor managers are part of Defendant's tip pool, the Court begins with them. As noted above, 29 U.S.C.A. § 203(m)(2)(B), an employer may not "allow[] managers or supervisors to keep any portion of employees' tips." The terms "manager" and "supervisor" are not defined by the statute, and the Department of Labor ("DOL") has promulgated a regulation defining the terms:

> For purposes of section 3(m)(2)(B), the term "manager" or "supervisor" shall mean any employee whose duties match those of an executive employee as described in § 541.100(a)(2) through (4) . . . of this chapter. . . .

29 C.F.R. § 531.52(b)(2) (the "Regulation"). The Regulation incorporates by reference the definition of overtime-exempt executive employees, which is a three-element test. The most relevant of these elements here is "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4).

As the Court noted above, there is no dispute that floor managers do not have the authority to hire and fire employees, and therefore under the Regulation, floor managers may share in the tip pool. However, Plaintiffs argue that the Regulation should not be afforded deference under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984) because Congress did not delegate authority to the DOL to define these statutory terms. But the Eleventh Circuit has already held that "the DOL's regulations implementing the FLSA are accorded *Chevron* deference." *Falken v. Glynn Cnty., Georgia*, 197 F.3d 1341, 1346 (11th Cir. 1999). The terms "manager" and "supervisor" appear in the FLSA, as amended, and the Court does not find that the Regulation is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843. As far as house managers are concerned, this

7

ends the Court's analysis. Plaintiffs' arguments to the contrary are better directed to a higher court, or Congress.

## II. House Moms

There is no dispute that the Policies preclude house moms from sharing in the tip pool. Defendant thus argues that "[w]hether house moms are 'managers or supervisors' is patently irrelevant and a red herring," and that "[a]ny tips Bosley gave to house moms or to bouncers outside of the tip pool were indisputably given voluntarily." (Reply at 3, 6). On the other hand, Plaintiffs argue that "[t]he purported issue of voluntariness is merely a red herring," because "[t]he FLSA prohibits an employer from 'allowing' managers and supervisors from receiving any portion of an employee's tips, 29 U.S.C. § 203(m)(2)(B), whether or not the employer considers the arrangement to be 'voluntary.'" (Resp. at 13).

As an initial matter, the Court agrees with Defendant that the FLSA does not categorically prohibit an employee from voluntarily giving a tip to a co-worker. The fact that "FLSA rights cannot be abridged by contract or otherwise waived," *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740–41 (1981), does not mean that an employee cannot voluntarily spend her earned wages in a way she chooses. In fact, Judge Ross has on several occasions held that voluntary sharing of tips with Defendant's house moms does not render house moms part of the tip pool for FLSA purposes. *Duren v. Int'l Follies, Inc.*, No. 1:19-CV-01512-ELR,

8

2021 WL 9274495, at *6 (N.D. Ga. July 12, 2021); *Mays v. Int'l Follies, Inc.*, No. 1:19-CV-01152-ELR, 2020 WL 13573506, at *7 (N.D. Ga. Sept. 25, 2020); *Crittendon v. Int'l Follies, Inc.*, No. 1:18-CV-02185-ELR, 2021 WL 9274510, at *11 (N.D. Ga. July 7, 2021).

But the Court also recognizes that written policies are not the be-all and end-all of the FLSA analysis, because businesses can have unwritten policies. Unfortunately, Plaintiffs fail to point to any. In their Statement of Additional Material Facts ("SAMF"), Plaintiffs assert that

> Bosley perceived that she experienced 'passive-aggressive coercion' to give additional tips to bouncers and house moms because they 'would only recommend certain dancers to go to tables that wanted to do VIPs and spend a lot of money and stuff like that. They would only recommend the dancers to those tables if the dancer they knew that dancer was going to tip them out. Like it was someone, veterans, I guess is what you would say, someone who had been there a while that knew the bouncers and stuff. The only way that bouncers would recommend you to tables is if you tipped them. Same with like house moms. They would let you leave early or maybe miss a day if you tipped them often and well, but otherwise they wouldn't.'

(Pls.' SAMF ¶ 27) (citing Deposition of Brittany Dakota Bosley dated March 19, 2022 ("Bosley Dep.") at 51:12 to 52:2, Doc. 42-7). Ms. Bosley also allegedly observed that house moms began recommending customers to her after she got on their good side by tipping them well. (*Id.* ¶ 29) (citing Bosley Dep. at 56:9– 15). Even assuming these facts were true, they fall far short of Defendant "allowing" the

9

house moms "to keep any portion of employees' tips" in violation of 29 U.S.C. § 203(m)(2)(B), particularly in light of the Policies and Ms. Bosley's admission that she never spoke to Mr. Braglia regarding any issues with respect to tips or the tip pool and never reported to Mr. Braglia that she was tipping for VIP referrals. (SMF ¶ 42, RSMF ¶ 42). Consequently, the Court will grant summary judgment on this issue as well.

## Conclusion

The Court sympathizes with Ms. Bosley, who undoubtedly had to navigate a complicated employment environment in an already inherently vulnerable position. But the record is absent of any material dispute of fact on her FLSA claim, and the Court must therefore grant Defendant's Motion. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 42) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiffs and to close the case.

**SO ORDERED** this 27th day of March, 2023.

_____
Victoria Marie Calvert
United States District Judge